UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

DELILAH LARK STARR,

                     Plaintiff,

       v.

DESCHUTES COUNTY, et al.,

                   Defendants.

No. CV 05-1954-MO

OPINION AND ORDER

**MOSMAN, J.,**

Plaintiff Delilah Lark Starr filed suit against Deschutes County and Sheriff Les Stiles ("defendants") seeking declaratory judgment and injunctive relief. Specifically, Ms. Starr urges the court to declare her property a Native American allotment and to enjoin defendants from taking any action to obtain possession of her property prior to the disposition of her request for an allotment. On January 25, 2006, after hearing from the parties in a telephone conference, the court denied as moot Ms. Starr's motion (#9) for a temporary restraining order because she was already removed from the land. The parties have fully briefed several motions now before the court, and for the reasons stated below, Ms. Starr's Motion (#3) for a Preliminary Injunction is DENIED, defendants' Motion (#6) to Dismiss is GRANTED, Ms. Starr's Motion (#12) to Continue is DENIED, and defendants' Motion (#17) for Extension of Time for Rule 16(b) Conference is DENIED as moot.

I.      BACKGROUND

Ms. Starr is 55 years old and is one half Shawnee Indian. 1st Starr Aff., ¶¶ 2-3. Since 1986, she has continuously occupied the property located at 56095 Savage Drive in Bend,

PAGE 1 - OPINION AND ORDER

Oregon. *Id*. at ¶ 2.  Ms. Starr is not regularly employed, but sometimes finds part-time work in restaurants or at gas stations.  *Id*. at ¶ 3.  During the 1990s, Deschutes County code enforcers issued multiple citations to Ms. Starr regarding plumbing and wiring violations on her property. *Id*. at ¶ 4.  Ms. Starr maintains that she does not use plumbing or wiring at her residence, but instead, according to the cultural tradition of her tribe, she uses an outdoor privy and draws water from a well.  *Id*.

Deschutes County also issued citations to Ms. Starr for having non-permitted structures such as recreational vehicles on the property, dwelling in or allowing others to dwell in these non-permitted structures, and discharging untreated or partially treated sewage or septic tank effluent directly or indirectly onto the ground surface or into public waters without a proper septic facility.  Craighead Aff., ¶ 3.  In February 2002, the Deschutes County Circuit Court found Ms. Starr guilty of violating the Deschutes County Code ("DCC") due to the presence of the non-permitted structures and non-permitted sewage disposal system on her property.  *Id*. at ¶ 4.  At that time, Ms. Starr was ordered to bring her property into compliance with the relevant portions of the DCC, but she failed to satisfy this order.  *Id*.  After another adjudication in Deschutes County Court regarding Ms. Starr's unlawful discharge of sewage, the court issued a judgment finding her property posed a public health hazard and a public nuisance.  *Id*. at ¶ 5.  The court authorized county employees to enter upon the property to conduct inspections and take the necessary remedial actions.  *Id*.

In January 2004, the Deschutes County Circuit Court found Ms. Starr in contempt of court for failing to cease improperly disposing of untreated sewage and for continuing to dwell in non-permitted structures on the property.  *Id*. at ¶ 6.  The court also ordered that all accumulated

PAGE 2 - OPINION AND ORDER

fines were to be a lien against the property.  *Id*.  Ms. Starr was given notice that she had until

September 10, 2004, to bring her property into compliance with the DCC, and if she did so, the

accumulated fines would be waived.  *Id*.  Ms. Starr failed to bring her property into compliance.

*Id*.

On February 10, 2005, Deschutes County brought a complaint against Ms. Starr to

foreclose the county's lien.  *Id*., Ex. A.  On August 26, 2005, the Deschutes County Circuit Court,

Judge Alta Brady, held trial on the matter and found that the County was entitled to a judgment

in the amount of $111,815.00, and that such judgment constituted a lien on the property.  *Id*. at

¶ 8.  On August 29, 2005, Deschutes County obtained judgment in Deschutes County Circuit

Court for this amount, plus $315.00 in attorney fees.  Def.'s Resp. to Pl.'s Mot. Prelim. Inj. at 2.

On December 1, 2005, Deschutes County purchased the property at a Sheriff's sale to satisfy the

County's judgment and "to enable county employees to enter onto the property and remedy the

various code violations present."  *Id*.  After the sale, a check in the amount of $25,000.00 was

sent to Ms. Starr to cover the Homestead Exemption due to her under Oregon law.  Craighead

Aff., ¶ 13.

On December 7, 2005, Deschutes County officials sent Ms. Starr a letter informing her

of the sale of the property, and warned her that if she did not vacate the property by January 6,

2006, Deschutes County would file a writ of assistance, seeking the court to order the Deschutes

County Sheriff's Office to assist in removing her from the land.  *Id*., Ex. H.  This letter addressed

the domestic animal situation on Ms. Starr's property and offered to provide Ms. Starr assistance

in finding new homes for the animals she planned to voluntarily surrender.  *Id*.

As of January 6, 2006, Ms. Starr remained in possession of the property.  Neeman Aff. in

Support of Writ of Assistance, ¶ 3. In light of Ms. Starr's refusal to vacate her property,

Deschutes County filed for a writ of assistance, which Judge Brady signed on January 12, 2006.

Craighead Aff., ¶¶ 16-17.

Ms. Starr also took legal action by filing a complaint (#1) in this district court on

December 29, 2005. In that complaint, Ms. Starr claims entitlement to relief under 25 U.S.C.

§ 177. Compl., ¶ 1. She contends that pursuant to this statute, she is entitled to a declaration and

injunctive relief because she is of Native American descent and because she is currently seeking,

through her application to the Department of the Interior and the Bureau of Land Management,

to change the status of the property into a Native American allotment. *Id*. at ¶ 7. According to

Ms. Starr, the granting of such an allotment would have the effect of nullifying the judgment

Deschutes County obtained against her. *Id*.

II.    DISCUSSION

A.    Preliminary Injunction

The main function of a preliminary injunction is to preserve the status quo and to prevent

irreparable loss of rights prior to judgment. *Sierra On-line, Inc. v. Phoenix Software, Inc.*, 739

F.2d 1415, 1422 (9th Cir. 1984). "'[A] preliminary injunction is an extraordinary and drastic

remedy, one that should not be granted unless the movant, by a clear showing, carries the burden

of persuasion.'" *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A C. Wright,

A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-30 (2d ed. 1995)). To

succeed on a motion for a preliminary injunction, the movant must demonstrate either "(1) a

likelihood of success on the merits and the possibility of irreparable injury or (2) the existence of

serious questions going to the merits and the balance of hardships tipping in [plaintiff's] favor."

*Nike, Inc. v. McCarthy*, 379 F.3d 576, 580 (9th Cir. 2004) (internal quotation marks and citation

omitted). "These two alternatives represent extremes of a single continuum, rather than two

separate tests. Thus, the greater the relative hardship to [plaintiff], the less probability of success

must be shown." *Id*. (internal quotation marks and citation omitted). "The critical element in

determining the test to be applied is the relative hardship to the parties. If the balance of harm

tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of

success on the merits as when the balance tips less decidedly." *Alaska, ex rel. Yukon Flats Sch.*

*Dist. v. Native Vill. of Venetie*, 856 F.2d 1384, 1389 (9th Cir. 1988).

      1.     Likelihood of Success on the Merits

      Ms. Starr cites the Indian Non-Intercourse Act ("the Act"), 25 U.S.C. § 177, as the basis

of her request for injunctive relief.[1]  The Act provides:

> No purchase, grant, lease, or other conveyance of lands, or of any
> title or claim thereto, from any Indian nation or tribe of Indians,
> shall be of any validity in law or equity, unless the same be made
> by treaty or convention entered into pursuant to the Constitution.
> Every person who, not being employed under the authority of the
> United States, attempts to negotiate such treaty or convention,
> directly or indirectly, or to treat with any such nation or tribe of
> Indians for the title or purchase of any lands by them held or
> claimed, is liable to a penalty of $1,000.  The agent of any state
> who may be present at any treaty held with Indians under the
> authority of the United States, in the presence and with the
> approbation of the commissioner of the United States appointed to
> hold the same, may, however, propose to, and adjust with, the
> Indians the compensation to be made for their claim to lands within
> such State, which shall be extinguished by treaty.

25 U.S.C. § 177.  Thus, to establish a violation of the Act, a plaintiff must show that (1) it

---

[1] Before reaching Ms. Starr's motion for a preliminary injunction, defendants make a
threshold argument that Ms. Starr lacks standing under the Act.  I address the issue of Ms. Starr's
standing in the analysis of defendants' motion (#6) to dismiss.

constitutes an Indian tribe within the meaning of the Act, (2) the tribe had an interest in or claim

to land protected by the Act, (3) the trust relationship between the United States and the tribe has

never been expressly terminated or otherwise abandoned, and (4) the tribe's title or claim to the

interest in the land has been extinguished without the express consent of the United States. *San

Xavier Dev. Auth. v. Charles*, 237 F.3d 1149, 1151-52 (9th Cir. 2001) (citing *Golden Hill

Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 56 (2d Cir. 1994)). The purpose of the Act is

"to prevent unfair, improvident or improper disposition by Indians of lands owned or possessed

by them to other parties, except the United States, without the consent of Congress." *Fed. Power

Comm'n v. Tuscarora Indian Nation*, 362 U.S. 99, 119 (1960).

Even after generously construing Ms. Starr's complaint, I find she has no likelihood of

success on the merits. Courts have consistently held that only Indian tribes may bring actions

under § 177, and individual Indians do not have standing to contest transfers of land under the

Act. *See, e.g.*, *San Xavier*, 237 F.3d at 1152; *United States v. Dann*, 873 F.2d 1189, 1195 (9th

Cir. 1989); *Tonkawa Tribe of Okla. v. Richards*, 75 F.3d 1039, 1045 (5th Cir. 1996); *Epps v.

Andrus*, 611 F.2d 915, 918 (1st Cir. 1979), *overruled on other grounds by James v. Watt*, 716

F.2d 71, 74 (1st Cir. 1983), ("courts have stated repeatedly, claims on the part of individual

Indians or their representatives are not cognizable in federal courts under the Indian Trade and

Non-Intercourse Act."). Although Ms. Starr alleges that she is one-half Shawnee Indian, she is

not an "Indian tribe" as that term is used in the Act. The term "Indian tribe" means "a body of

Indians of the same or similar race, united in a community under one leadership or government,

and inhabiting a particular, though sometimes ill-defined, territory." *Alonzo v. United States*, 249

F.2d 189, 194-95 (10th Cir. 1957) (internal quotation marks omitted).

PAGE 6 - OPINION AND ORDER

Furthermore, the prohibitions of the Act apply only to "tribal land, which is land held in common for the benefit of all members of a tribe." *San Xavier*, 237 F.3d at 1151.  Ms. Starr has not shown that this is, or ever was, "tribal land."  The property in question was never owned or claimed by the Shawnee Nation, nor was there ever any trust relationship between the United States and the Shawnee Nation with respect to the property.  Def.'s Resp. to Pl.'s Mot. Prelim. Inj. at 9.  Even if Ms. Starr successfully obtained an allotment for this property, she still would not have standing to bring an action under the Act because allotted land is not "tribal land."  *See San Xavier*, 237 F.3d at 1152.  In sum, Ms. Starr has virtually no likelihood of success on the merits.

2.    Balance of Hardships

In the absence of a robust showing of likelihood of success on the merits, a plaintiff may still obtain a preliminary injunction if the balance of hardships weighs decidedly in her favor. *McCarthy*, 379 F.3d at 580.  Ms. Starr contends that she will be forced to live on the street as a result of Deschutes County forcibly removing her from the property.  Defendants counter that Ms. Starr received $25,000.00 from the Sheriff's sale, and she has family in Bend with whom she could live.  Def.'s Resp. to Pl.'s Mot. Prelim. Inj. at 10.  Moreover, I find that Deschutes County gave Ms. Starr sufficient notice that if she did not bring her property into compliance with the DCC, she would be removed from the property.  Ms. Starr failed to heed defendants' warnings, continued to violate the DCC, and now she faces the consequences.

Deschutes County stands to lose a great deal if I were to enter a preliminary injunction. After many years of expensive legal disputes with Ms. Starr, the county paid $111,815.00 to purchase this property and obtained valid legal title.  Deschutes County has also dedicated significant resources, by way of public expense and employee time, to formulate a recovery

plan to ameliorate the public health hazard currently posed by the property. The issuance of a preliminary injunction, such that Ms. Starr could return to the property and continue violating the DCC, would have the effect of negating the efforts undertaken by Deschutes County, at great expense, in obtaining legal title to the property. Additionally, there is a significant public interest served by denying Ms. Starr's motion. The property is littered with piles of debris, trash, rusted metal, junk appliances, and three open pit privies. Untreated sewage has been discharged directly onto the ground surface, posing a threat to the community because of the potential contamination to the subsurface water supply in the area. Def.'s Resp. to Pl.'s Mot. Prelim. Inj. at 13. Thus, the balance of hardships tips in favor of defendants, and without showing a likelihood of, or even serious questions going to her success on the merits, Ms. Starr is not entitled to a preliminary injunction, and her motion (#3) is denied.

      B.      Motion to Dismiss

Defendants move to dismiss Ms. Starr's case for the following reasons: (1) failure to state a claim because Ms. Starr lacks standing; failure to state a claim against defendant Stiles; (2) lack of subject matter jurisdiction; and (3) Ms. Starr's claims are barred by the Oregon Tort Claims Act ("OTCA"). If the court denies defendants' motion to dismiss, defendants request the court to order Ms. Starr to make her claims against Sheriff Stiles more definite. For the reasons stated below, defendants' motion to dismiss is granted.

      1.      Motion to Dismiss under 12(b)(6) - Failure to State a Claim

In ruling on a motion to dismiss for failure to state a claim, "the court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). "[T]he

Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Rather, a complaint need only provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id*. Accordingly, "[a] motion to dismiss for failure to state a claim may not be granted unless it appears beyond doubt that the [nonmovant] can prove no set of facts in support of his claim which would entitle him to relief." *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 984 (9th Cir. 2000) (internal quotation marks and citation omitted). "Nonetheless, conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).

Ms. Starr relies on the Indian Non-Intercourse Act as the basis for her request for declaratory and injunctive relief. However, as the court already discussed regarding her likelihood of success on the merits, Ms. Starr is not likely to succeed under the terms of the Act. By its terms, the prohibitions of the Act apply only to tribal lands, and individual Indians do not have standing to bring suit under the Act. *San Xavier*, 237 F.3d at 1152. Ms. Starr's complaint alleges that she is one-half Shawnee Indian and is currently applying to the Bureau of Land Management to change the status of the property into a Native American allotment. Even assuming these allegations are true, her complaint lacks any showing that she qualifies as an Indian tribe, is bringing suit on behalf of an Indian tribe, or that the property in question qualifies as "tribal land," and therefore Ms. Starr does not have standing under the Act upon which she bases her claim for relief. Going one step further and assuming that Ms. Starr's application for an allotment is granted, the Act "does not apply to allotted land, which is land once held in common,

but now owned by individual Indians, and held in trust by the federal government." *San Xavier*, 237 F.3d at 1151. Therefore, it appears beyond doubt that Ms. Starr can prove no set of facts in support of her claim which would entitle her to relief under the Act, and defendants' motion to dismiss for failure to state a claim should be granted.

Defendants also move to dismiss Ms. Starr's complaint for failure to state a claim with regard to named defendant Sheriff Stiles. Motions to dismiss under Rule 12(b)(6) essentially test whether the plaintiff has pled a cognizable claim. Fed. R. Civ. P. 12(b)(6). Here, the caption of Ms. Starr's complaint names Sheriff Stiles, but the remainder of Ms. Starr's complaint is devoid of any allegations of fact concerning Sheriff Stiles, either directly or indirectly. Therefore, Ms. Starr's complaint against Sheriff Stiles is dismissed for failure to state a claim.

2.    Motion to Dismiss under 12(b)(1) - Lack of Jurisdiction

Defendants also move to dismiss Ms. Starr's complaint on the grounds that she failed to allege the basis for this court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). In other words, defendants contend that Ms. Starr has not adequately shown a legal basis on which this court can hear her motion. Federal courts are presumptively without jurisdiction over civil actions, like the action here, and the burden of establishing that the court has jurisdiction rests on the party bringing the complaint, Ms. Starr. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Ms. Starr's complaint claims entitlement to relief under a federal statute, 25 U.S.C. § 177. Defendants note that this statute does not explicitly allow for injunctive or declaratory relief. However, in light of my decision granting defendants' motion to dismiss for failure to state a claim, I find it is unnecessary to analyze whether Ms. Starr's reliance on a federal statute is sufficient to bring this action within the court's subject matter jurisdiction over

PAGE 10 - OPINION AND ORDER

cases or controversies "arising under" federal law.  28 U.S.C. § 1331.  In that regard, it is also

unnecessary for me to discuss defendants' motion to dismiss concerning the OTCA.

III.    CONCLUSION

    For the aforementioned reasons, Ms. Starr's Motion (#3) for a Preliminary Injunction

is DENIED, and defendants' Motion (#6) to Dismiss is GRANTED.  Together, these rulings

compel me to DENY AS MOOT Ms. Starr's Motion (#12) to Continue and defendants' Motion

(#17) for Extension of Time for Rule 16(b) Conference.

    IT IS SO ORDERED.

    DATED this __14th__ day of March, 2006.


                /s/ Michael W. Mosman_____
                MICHAEL W. MOSMAN
                United States District Court Judge